DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| TRANSPORTATION SERVICES OF ST. JOHN, INC., | ) ) ) | |
| Plaintiff, | ) ) | Civil No. 2014-11 |
| v. | ) ) | |
| INTERNATIONAL MARINE SALES & EXPORT, LLC, | ) ) ) | |
| Defendants. | ) ) | |

ATTORNEYS:

**Maria Tankenson Hodge, Esq.**
Hodge & Francois
St. Thomas, U.S.V.I.
    *For Transportation Services of St. John, Inc.*


## MEMORANDUM OPINION

**GÓMEZ, J.**

Before the Court is the complaint of Transportation Services of St. John, Inc.

## I. FACTUAL AND PROCEDURAL HISORY

Transportation Services of St. John, Inc. ("Transportation Services") is a Virgin Islands corporation that operates an inter-island ferry service between St. John and St. Thomas. International Marine Sales & Export, LLC ("International Marine") is a domestic limited liability company formed and existing under the laws of Nevada. International Marine is authorized to transact business in Florida as a foreign limited

liability company. Its principal place of business is in Florida.

In early 2013, Transportation Services sought to purchase a marine propulsion engine. Transportation Services intended to use the engine to repair one of its passenger ferries, the M/V Caribe Time ("Caribe Time"). International Marine contacted Transportation Services and informed Transportation Services that it had located a suitable engine that was ready to ship immediately at a price of $50,000.

The parties agreed that the price could be paid in installments. On April 22, 2015, Transportation Services wired a $15,000 down payment to International Marine. On May 7, 2013, Transportation Services wired an additional $10,000 payment to International Marine. On May 17, 2013, Transportation Services wired the remaining $25,000 to International Marine. In addition to the $50,000 Transportation Services paid to International Marine, Transportation Services also paid $225 in fees to wire the payments.

At some point, International Marine provided Transportation Services with an invoice indicating that only $25,000 remained

due.[1] The invoice also stated that the shipping date was April 19, 2013.[2]

Subsequently, International Marine informed Transportation Services that the engine had been lost in a tornado in Oklahoma. Thereafter, Transportation Services sought assurances from International Marine that it would receive an engine in time for the engine to be installed for the 2013 St. John Festival Week, which takes place during the week that includes the Fourth of July. International Marine failed to provide the requested assurances. Consequently, on June 25, 2013, Transportation Services terminated its order and demanded that International Marine return, within 5 days, the $50,000 it had been paid.

On February 3, 2014, Transportation Services filed a complaint against International Marine alleging breach of contract. In the complaint, Transportation Services seeks to recover its $50,000 payment, incidental and consequential damages, interest, and attorney's fees.

---

[1] The date on the invoice is April 19, 2013. At the same time, the invoice reflects payments made in May, 2013. It is unclear whether May was the first time the invoice was issued or whether the invoice had been previously issued and was then updated.

[2] It is curious, though not dispositive, that the shipping date indicated on the invoice is before the dates on which the invoice indicates payment was received. It is unclear what, if any, communication the parties had about the shipping date other than that Transportation Services required that the engine arrive in time to install for St. John Festival Week.

*Transportation Services of St. John, Inc. v. International Marine Sale & Export, LLC*
Civil No. 2014-11
Bench Memorandum
Page 4

International Marine never responded to the complaint and has not appeared in this action. On May 12, 2014, Transportation Services moved for entry of default against International Marine. On May 19, 2014, the Clerk of Court entered default against International Marine.

On February 3, 2015, the Court held a bench trial at which it found that default judgment was appropriate against International Marine. The Court indicated that it would award Transportation Services at least $50,225 in compensatory damages. The Court also stated that:

> I think on balance here it seems to me that Ms. Turnbull's testimony, at least, gives the Court some idea as to the revenue . . . And while it's not ideal, the Court finds it to be at least adequate under the circumstances to award $20,000 in expectation damages, at least for the damage week . . . .

(Bench Trial Transcript, 48:12:-19.) No final judgment has been entered on the docket.

The Court is concerned that it erred when it awarded an additional $20,000 in consequential damages. Because no final judgment has been entered in this case depriving the Court of jurisdiction, the Court may reconsider its award of damages as long as the Court "explain[s] on the record the reasoning behind its decision to reconsider the prior ruling, and . . . take[s] appropriate steps so that the parties are not prejudiced by

*Transportation Services of St. John, Inc. v. International Marine Sale &*
*Export, LLC*
Civil No. 2014-11
Bench Memorandum
Page 5

reliance on the prior ruling." *DeFranco v. Wolfe*, 387 F. App'x

147, 156 (3d Cir. 2010).

At trial, Charlene Turnbull, the Comptroller of

Transportation Services, ("Turnbull") provided testimony

relevant to Transportation Services's consequential damages. The

Court inquired into Turnbull's knowledge of revenue during St.

John Festival Week:

> THE COURT: -- do you have any information on what
> the revenues were in the years prior to 2013 for
> the St. John festival week?
>
> TURNBULL: No, I do not.
>
> THE COURT: Do you have any information what the
> revenues were for the St. John festival week in
> 2013 or 2014?
>
> TURNBULL: I don't have it in front of me, but I'm
> sure it's upwards of close to $70,000.
>
> . . .
>
> THE COURT: Okay. I'm just asking for the festival
> week, St. John festival week, what the revenues
> were for that week for the years that I mentioned,
> 2011, 2012, 2013 and 2014, if you have knowledge
> of what the revenues were for any of those years.
>
> TURNBULL: Well, I believe the estimate of what the
> revenue is, is somewhere around $70,000 for that
> particular week.

(Bench Trial Transcript, 33:22-34:19.)

*Transportation Services of St. John, Inc. v. International Marine Sale & Export, LLC*
Civil No. 2014-11
Bench Memorandum
Page 6

Transportation Service's attorney then inquired as to Turnbull's knowledge of Transportation Services's revenues during St. John festival week:

> ATTORNEY: So, Ms. Turnbull, just following up on the Court's question, based on your experience with Transportation Services as [comptroller] for the period of years you've described, can you provide the Court with a reasonable estimate of the amount of your additional revenues during the 4th of July week for the years 2012, 2013 and 2014?
>
> TURNBULL: Yes, I can.
>
> ATTORNEY: And what would that number be?
>
> TURNBULL: Somewhere around 75 thousand.

(*Id.* at 35:18-36:2.)

The Court then continued its questioning:

> THE COURT: What is the lowest amount, that you're aware of, that Transportation Services has made for the week for the St. John festival week for the years 2011, '12, '13 or '14. What is the lowest amount?
>
> TURNBULL: I would say probably 50.
>
> THE COURT: Okay. And what was the amount made in 2013, to your knowledge?
>
> TURNBULL: 2013. It would probably -- it was probably somewhere around there, because we only had two vessels.

(*Id.* at 36:3-36:12.)

Summing up this testimony, the Court stated that

*Transportation Services of St. John, Inc. v. International Marine Sale & Export, LLC*
Civil No. 2014-11
Bench Memorandum
Page 7

> . . . I think she said it was in the neighborhood
> of $70,000 in revenue for the St. John festival
> week. I asked her what is the lowest amount over
> the period 2011, '12, '13, '14, and I think she
> said 50,000 -- and I believe she attributed that
> to 2013 -- which would make a net loss of 20,000
> in revenue, if the Court were to determine that
> the expectation for carnival week is 70 thousand
> and the difference in loss is 20,000 between 50-
> and 70,000.

(*Id.* at 44:7-16.) On that basis, the Court awarded

Transportation Services $20,000 in consequential damages. (*Id.*

48:16-19).

Consequential damages are available for lost profits--lost

revenue minus avoided costs. *See Vitex Mfg. Corp. v. Caribtex

Corp.*, 377 F.2d 795, 797 (3d Cir. 1967). It was the Court's

intention to award to Transportation Services any profits lost

during the 2013 St. John Festival Week due to the Caribe Time's

lack of an engine.

The realization of that goal, however, is frustrated as the

record is devoid of key cost and vessel usage information. To

begin, the $70,000 estimate for 2011, 2012, 2013, and 2014 (and

the $75,000 estimate for 2013 and 2014) was a revenue estimate.

In contrast, the $50,000 estimate was an estimate of how much

Transportation Services "made" during the 2013 St. Thomas

Festival Week--it was an income estimate. Subtracting an income

estimate from a revenue estimate without taking into account

costs, as the Court did at the February 3, 2015, hearing, does not properly ascertain lost profits.

Moreover, the Caribe Time--the vessel that required the engine--was in operation between 2005 and 2010. (*See* Bench Trial Transcript, 29:9-13 ("And what you have before you, you have the revenue that we received from the downtown run when the Carib[e] Time was in operation between 2005 and 2010.")) It was not in operation during 2011, 2012, 2013, or 2014--the only years for which Turnbull estimated revenue or profit realized during St. John Festival Week. Therefore, even if the $70,000 estimate was a profit estimate, subtracting the $50,000 estimate from the $70,000 estimate would not reveal the profits lost because the Caribe Time did not have a working engine. Because both the $70,000 estimate and the $50,000 estimate were for years in which the Caribe Time was not operational, any decrease in profits between those years could not be attributed to Caribe Time's inoperability. As such, the Court cannot draw any conclusions regarding lost profits during the 2013 St. John Festival Week from Turnbull's testimony regarding revenues or income from 2011, 2012, 2013, and 2014.

Turnbull also testified to the yearly revenue and profits from the "downtown run." These figures included years in which the Caribe Time was in operation.

Ultimately, however, the Court concludes that it cannot pro-rate these figures to determine a minimal amount of consequential damages for several reasons. First, Turnbull testified that the Caribe Time was the primary vessel for the downtown run, not the only vessel. As such, it is unclear how much of that revenue is attributable to the Caribe Time. Second, while the addition of the Caribe Time during the 2013 St. John Festival Week would likely have increased revenues and profits, there was no testimony that the marginal increase in profits from an additional vessel was comparable to the extra profits achieved by using the Caribe Time for downtown runs.

Lastly, Turnbull testified as to the yearly fuel savings from using the Caribe Time. The Court also finds that it cannot pro-rate this amount because the testimony indicates that the Caribe Time would have been used as an additional vessel, rather than substituted for a less fuel efficient vessel. (*See id.* at 36:3-12 (testifying that profit was lowest during the 2013 St. John Festival Week because Transportation Services only had two vessels)).

Turnbull's testimony is the only evidence that was offered in support of consequential damages for lost profits during the 2013 St. John Festival Week. For the reasons stated above, the Court is convinced that it erred when it relied on Turnbull's

*Transportation Services of St. John, Inc. v. International Marine Sale & Export, LLC*
Civil No. 2014-11
Bench Memorandum
Page 10

testimony to award $20,000 in consequential damages to

Transportation Services. Moreover, the Court does not find any

other adequate basis on the record on which to base an award of

lost profits. Accordingly, the Court will not award

Transportation Services consequential damages.[3]

    An appropriate judgment follows.


                S\_____
                  **Curtis V. Gómez**
                  **District Judge**

---

[3] The Court also notes that there is no prejudice to Transportation Services because (1) there were no further proceedings in this case in which Transportation Services relied on the Court's oral judgment; and (2) final judgment was not entered.